# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PETER NEWMAN, | : | Case No. 3:17-cv-179 |
| | : | |
| Plaintiff, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF DAYTON, et al., | : | |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER GRANTING MOTION TO DISMISS (DOC. 18), DENYING MOTION TO STAY DISCOVERY (DOC. 27) AS MOOT, AND TERMINATING CASE**

---

This case is before the Court on the Motion to Dismiss (Doc. 18) filed by all of the Defendants to this action—namely, the University of Dayton (the "University"), ten University employees (Carolyn Phelps, Kimberly Bakota, Christine Schramm, Terence Lau, Jay Janney, E. James Dunne, Eric Spina, Andrew Strauss, Amy Zavadil, and Mary Ann Recker), and Bridget Jackson, who is a law student at the University (collectively, "Defendants"). Defendants argue that Plaintiff Peter Newman's Complaint should be dismissed under the doctrine of judicial estoppel because he failed to disclose his employment with the University and his claims against Defendants in this case to the Bankruptcy Court considering his Chapter 13 Bankruptcy Petition.

Plaintiff submitted two affidavits with his Memorandum in Opposition and therefore requests that the Court convert the Motion to Dismiss into a Motion for Summary Judgment. (Doc. 26.) In reply, Defendants argue that, whether or not the

Court considers their Motion as a motion to dismiss or a motion for summary judgment, the Complaint should be dismissed in its entirety.

In order to properly consider Plaintiff's Memorandum in Opposition, the Court must convert the Motion to Dismiss into a Motion for Summary Judgment. Even considering the evidence submitted by Plaintiff, however, he still fails to demonstrate that judicial estoppel should not be applied in this case. The Court therefore **GRANTS** the Motion to Dismiss (Doc 18) and the Clerk is directed to **TERMINATE** this case on the Court's docket. Accordingly, Defendants' Motion to Stay Discovery (Doc. 27) is **DENIED** as moot.

## I. BACKGROUND

### A. Plaintiff's Employment at the University and Claims in this Lawsuit

From Fall 2014 through Winter 2017, Plaintiff was employed as an adjunct professor at the University. (Doc. 1 at ¶ 1; Doc. 26 at 3; Doc. 26-1 at ¶ 3.). He taught courses in the University's School of Law, MBA Program, and School of Business Administration. (Doc. 1 at ¶ 1.)

On September 16, 2016, Plaintiff filed an internal discrimination and harassment complaint against one of his students, an African American woman named Bridget Jackson (also a named Defendant in this case), with the University's Interim Title IX Coordinator. (*Id.* at ¶ 3.) Plaintiff alleges that, in response to the Title IX complaint, the University engaged in a "pattern of retaliation taking adverse actions against the Plaintiff each time he engaged in protected conduct which ultimately lead to the

termination of Plaintiff's teaching career at [the University] and [the University] banning him from visiting its campus." (*Id.* at ¶ 4.)

On October 14, 2016, the University notified Plaintiff that he would not be scheduled to teach classes for the Spring 2017 semester. (*Id.* at ¶ 46.) On November 9, 2016, Plaintiff met with the Interim Dean of the School of Business Administration and the Associate Provost for Faculty and Academic Affairs to discuss his behavior at the School of Business. On December 9, 2016, the University told Plaintiff that it would not mediate his claims. (*Id.* at ¶ 55.) On December 22, 2016, Plaintiff received his last paycheck from the University. (Doc. 29-1 at ¶ 5.) Between January 23, 2015 and December 22, 2016, the University paid Plaintiff a total of $38,762. (*Id.*)

On January 20, 2017, Plaintiff filed an administrative complaint with the Department of Education Office of Civil Rights relating to his employment at the University. (Doc. 1 at ¶ 69.) On February 14, 2017, Plaintiff filed an employment discrimination charge with the Equal Employment Opportunity Commission. (*Id.*) On February 28, 2017, Plaintiff filed an employment discrimination claim with the Ohio Civil Rights Commission. (*Id.*)

On May 19, 2017, Plaintiff filed the Complaint in this action. Plaintiff asserts thirteen claims against Defendants: (1) retaliation in violation of Title VII, Title IX, and the Ohio Civil Rights Act, (2) age discrimination in violation of the Age Discrimination in Employment Act and Ohio Rev. Code § 4112.02(A), (3) denial of public accommodations in violation of Ohio Rev. Code §§ 4112.02(G) and (I), (4) aiding and abetting discrimination in violation of Ohio Rev. Code § 4112.12 (j), (5) sex

3

discrimination in violation of Title IX, (6) erroneous outcome in violation of Title IX, (7) deliberate indifference in violation of Title IX, (8) harassment in violation of Title IX, (9) negligence, (10) defamation per se, (11) promissory estoppel, (12) breach of implied contract, and (13) misrepresentation and fraud. Although Plaintiff brings these claims against different combinations of Defendants, all of them are premised on actions taken by them relating to Plaintiff's employment at the University and/or the filing of his Title IX complaint.

### B. Plaintiff's Chapter 13 Bankruptcy Petition

On October 8, 2014, Plaintiff filed a Chapter 13 Bankruptcy Petition with the United States Bankruptcy Court for the Southern District of Ohio. (*In re Peter K. Newman and Susan B. Newman*, Case No. 3:14-bk-33622, Doc. 1 (Bankr. S.D. Ohio) (hereinafter, documents in the docket of the Bankruptcy Court will be referenced as "BK Doc. [X]").) On Schedule I, Part 1, of the Petition, under the title "Your Income," Plaintiff listed his occupation as "disabled." (BK Doc. 1 at 23.) He also does not list any "part-time, seasonal, or self-employed work" where required on the form. (*Id.*) On Schedule I, Part 2, he lists his income as $0 and states that he does not expect his income to increase in the following year. (*Id.*)

On October 27, 2014, Plaintiff filed his Chapter 13 Bankruptcy Plan. (BK Doc. 12.) In the Plan, Plaintiff acknowledges that "[t]he Debtor shall keep the Trustee informed as to any changes in status of any claim . . . to which the Debtor(s) may be entitled." (*Id.* at 13, ¶ 14.)

4

On February 5, 2015, Plaintiff filed an Amended Chapter 13 Bankruptcy Plan. (BK Doc. 53.) In the Amended Plan, Schedule I, Plaintiff again listed his occupation as "disabled" and did not disclose any employment at or income from the University. (BK Doc. No. 53-1 at 1-2.) To the contrary, Plaintiff stated that he "has earned no income in at least the past six months," did not expect his income to increase in the following year, and there were "no anticipated changes to income." (*Id.*) On February 26, 2015, Plaintiff filed a Third Amended Chapter 13 Bankruptcy Plan. (BK Doc. 67.)

On April 15, 2015, the Bankruptcy Court entered an Order confirming the Chapter 13 Bankruptcy Plan stating that "the debtor shall notify the Chapter 13 Trustee in writing if the debtor's place of employment changes and the name and address of the new employer." (BK Doc. 75 at 2.) On May 20, 2015, Plaintiff filed a Motion for Modification of Plan Post Confirmation and Notice. (BK Doc. No. 77.) Plaintiff requested a $10,085 reduction in a lump sum payment that was overdue and owing to the Internal Revenue Service ("IRS") and a reduction in the percentage to be paid to unsecured creditors from 3% to 1%. (*Id.* at 1, Nos. 5-6.) Plaintiff asserted that modification of his Chapter 13 Plan was necessary "due to unexpected financial circumstances" relating to additional expenses. (*Id.*) Plaintiff did not disclose his employment at the University in his Motion for Modification. (*Id.*) On October 15, 2015, the Bankruptcy Court granted Plaintiff the relief that he requested by modifying the required payments to his creditors. (BK Doc. 91.)

On May 3, 2017, the Bankruptcy Court entered an order to Dayton Public Schools regarding deductions to be made from the wages of Plaintiff's co-debtor in the

5

bankruptcy proceedings. (BK Doc. No. 111.) On July 14, 2017, the Bankruptcy Trustee filed a Motion to Dismiss based on Plaintiff's alleged failure to turn over tax returns and/or a tax refund. (BK Doc. No. 113.)

On August 22, 2017, Plaintiff filed an Amended Schedule with the Bankruptcy Court that disclosed his claims against Defendants in this case. (BK Doc. No. 117.)

## II.   **LEGAL STANDARD**

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir.1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they

6

are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008). Here, Defendants have referenced the Plaintiff's bankruptcy court proceedings and the filings in the publicly available docket for that case. (Doc. 18-1.) These are public records which may be considered by the Court in ruling on a Rule 12(b)(6) motion to dismiss. However, Plaintiff attached his own affidavit and an affidavit from his bankruptcy counsel to his Memorandum in Opposition. Plaintiff's affidavits constitute materials outside the pleadings.

When a district court considers materials outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, the court may enter summary judgment *sua sponte* if the losing party is on notice that he must come forward with all of his evidence relevant to the issue. *Salehpour v. University of Tennessee*, 159 F.3d 199, 204 (6th Cir.1998). "Whether notice of conversion of a motion to dismiss to one for summary judgment by the court to the opposing party is necessary depends upon the facts and circumstances of each case." *Id.* (citing *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 393 (6th Cir. 1975)). Notice is required where one party is likely to be surprised by the proceedings. *Id.* Here, Plaintiff presented the evidence outside the pleadings in response to the Motion to Dismiss and expressly requested that the Court convert it into a Motion for Summary Judgment.

A party cannot claim to have been "surprised by the conversion of the motion to dismiss into a motion for summary judgment when the party was aware that materials outside the pleading had been submitted to the court before the court granted the

motion." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993). Based on the facts and circumstances in this case, Plaintiff will neither be surprised nor prejudiced since conversion of the motion, at his request, will permit the Court to consider Plaintiff's evidence. The Court therefore converts the pending Motion to Dismiss into one for summary judgment.

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist

to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir.1996).

### III. <u>ANALYSIS</u>

Defendants argue that, under the doctrine of judicial estoppel, Plaintiff should not be permitted to pursue claims relating to his employment at the University when he failed to disclose that employment and the fact that he brought this lawsuit to the Bankruptcy Court. Plaintiff opposes Defendants' Motion to Dismiss on several grounds, which are addressed below.

Judicial estoppel is an equitable doctrine that precludes a party from asserting a position contrary to one the party has asserted under oath in a prior proceeding, such as a bankruptcy case. *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002). The judicial estoppel doctrine exists to safeguard "the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990). The Sixth Circuit has described judicial estoppel as a "rule against playing fast and loose with the courts," "blowing hot and cold as the occasion demands," or "having one's cake and eating it too." *Lewis v. Weyerhaeuser Co.*, 141 Fed. Appx. 420, 424 (6th Cir. 2005), citing *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 472 (6th Cir. 1988).

In order to invoke judicial estoppel, a party must show that the opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court. *Teledyne*, 911 F.2d at 1218, citing *Reynolds*, 861 F.2d at 472-73. To

determine if judicial estoppel should be applied in this case, the Court should consider whether (1) Plaintiff is asserting a position that is contrary to one that he asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) Plaintiff's omissions resulted from mistake or inadvertence. *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010). In determining if the omissions resulted from mistake or inadvertence, the Court considers whether: (1) Plaintiff "lacked knowledge of the factual basis of the undisclosed claims;" (2) Plaintiff "had a motive for concealment;" and (3) "the evidence indicates an absence of bad faith." *Id.* Plaintiff's attempts to advise the bankruptcy court of the omitted claim are relevant to whether there was an absence of bad faith. *Id.*

Pursuant to Section 521 of the Bankruptcy Code, a debtor is required to file a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs, among various other documents and records. 11 U.S.C. §521(a)(1)(B). A civil cause of action is an asset that must be disclosed in the debtor's schedule of assets pursuant to Section 521. *Schultz v. Hydro-Gear Ltd. P'ship*, No. 5:12-CV-10, 2012 U.S. Dist. LEXIS 115025, at *4 (W.D. Ky. Aug. 15, 2012) (citing *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004)). The duty of disclosure in bankruptcy "is a continuing one, and a debtor is required to disclose all potential causes of action." *Id.* (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)).

Further, "the disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003); *see also In re Coastal Plains*, 179 F.3d at 208 ("Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized.").

Here, the application of judicial estoppel is appropriate because Plaintiff took a contrary position under oath in his bankruptcy proceeding, which was accepted by the Bankruptcy Court, and Plaintiff's prior position cannot be attributed to mistake or inadvertence. *Teledyne*, 911 F.2d at 1218; *White*, 617 F.3d at 478. Specifically, Plaintiff failed to disclose his employment income from the University and the claims in this case to the Bankruptcy Court, despite his obligation to do so. In reliance on Plaintiff's false representations (by omission) regarding his income and assets, the Bankruptcy Court entered, modified, and oversaw the execution of Plaintiff's Chapter 13 Bankruptcy Plan.

Balancing the equities, the Court finds that applying judicial estoppel is warranted because, otherwise, Plaintiff's attempt to take advantage of the judicial process will have no consequences. The Court also agrees with the Seventh Circuit's observation when considering the application of judicial estoppel under similar circumstances that:

> A doctrine that induces debtors to be truthful in their bankruptcy filings will assist creditors in the long run (though it will do them no good in the particular case) – and it will assist most debtors too, for the few debtors

11

> who scam their creditors drive up interest rates and injure the more numerous honest borrowers. Judicial estoppel is designed to "prevent the perversion of the judicial process," *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.1990), a fair description of the result if we were to let Cannon-Stokes conceal, for her personal benefit, an asset that by her reckoning is three times the value of the debts she had discharged.

*Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). As in *Cannon-Stokes*, applying judicial estoppel in this case will promote full and honest disclosure in bankruptcy proceedings in the future.

Plaintiff argues that his failure to disclose his income is irrelevant to whether judicial estoppel should be applied. This argument is not well-taken. *See Lewis*, 141 F. App'x at 428-29. In *Lewis*, the plaintiff asserted claims for employment discrimination, but she had failed to disclose her employment with the defendant in her Chapter 13 bankruptcy filings. *Id.* The Sixth Circuit affirmed the district court's dismissal of the plaintiff's claims under the doctrine of judicial estoppel due to her failure to make that disclosure. *Id.* Thus, Plaintiff's failure to disclose his income from the University is not only relevant, but is sufficient alone to support the application of judicial estoppel.

Plaintiff also argues that his failure to disclose the claims in this lawsuit should be disregarded because they were filed after his bankruptcy petition. (Doc. 29 at 7.) This argument fails because it does not take into account Plaintiff's continuing duty of disclosure under the Bankruptcy Code. *Lewis*, 141 F. App'x at 424 (noting the "duty of disclosure is a continuing one" under the Bankruptcy Code); *see also Harrah v. DSW Inc.*, 852 F. Supp. 2d 900, 904 (N.D. Ohio 2012).

The facts in this case are similar to those in *Harrah*. In that case, the plaintiff brought age discrimination and retaliation claims against her former employer, but failed to disclose those claims in her Chapter 13 bankruptcy filings. *Harrah*, 852 F.Supp.2d at 902. The facts giving rise to the plaintiff's claims against her employer occurred two years before she filed her bankruptcy petition. Two years after filing the bankruptcy petition, the plaintiff filed her lawsuit against her former employer. *Id.* The plaintiff did not amend her schedule of assets in the bankruptcy proceeding to include her claims, however, until after the employer filed a motion for judgment on the pleadings—which raised the issue—in the district court. *Id.* The district court found that the plaintiff's omission "essentially asserted [to the Bankruptcy Court] that the discrimination and retaliation claims did not exist" and was "irreconcilable with the allegations contained in the [plaintiff's employment discrimination complaint]." *Id*.

The bankruptcy court in *Harrah* had accepted the plaintiff's prior inconsistent position (to her benefit) by confirming the Chapter 13 bankruptcy plan. *Id*. at 905. The district court found that plaintiff's failure to disclose her claims was not "inadvertent" because she made no effort to inform the bankruptcy court of them until after the defendant filed a motion for judgment on the pleadings. *Id*. at 905-6. Citing the Sixth Circuit's reasoning in *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010), the district court determined that giving plaintiff credit for disclosing her claims after the filing of a dispositive motion "would encourage gamesmanship and jeopardize the integrity of the judicial process, for allowing a plaintiff to amend sworn bankruptcy

13

filings after an omission is raised by an adversary encourages debtors to disclose their assets only if they are caught concealing them." *Id.*, citing *White*, 617 F.3d at 480.

Here, the sequence of events is similar, although not identical, to the sequence of events in *Harrah*. Plaintiff accepted an adjunct position with the University before filing his Bankruptcy Petition. (Doc. 26 at PAGEID 192; BK Doc. 1.) The Bankruptcy Court then confirmed a Bankruptcy Plan and entered a modified Bankruptcy Plan based on Plaintiff's representations that he did not have any income. (BK Doc. Nos. 75, 77, 91.) His claims in this case, however, did not arise until May 2016, after the modification of the Bankruptcy Plan. (Doc. 1 at ¶¶ 35-36.) Thereafter, Plaintiff filed a discrimination and harassment complaint with the University in September 2016, an administrative complaint with the Department of Education Office of Civil Rights in January 2017, and an employment discrimination charge with the Ohio Civil Rights Commission in February 2017. (Doc. 1 at ¶¶ 39, 69.) On May 19, 2017, Plaintiff filed the Complaint in this case. (Doc. 1.)

On May 3, 2017, less than three weeks before the filing of the Complaint, the Bankruptcy Court ordered Dayton Public Schools to deduct certain amounts from the wages of Plaintiff's wife, his co-debtor, pursuant to the modified Bankruptcy Plan, which, again, did not disclose Plaintiff's income or claims in this lawsuit. (BK Doc. 111.) Plaintiff disclosed claims to the Bankruptcy Court only after Defendants filed their Motion for Judgment on the Pleadings in this case. (BK Doc. 117.) The mere fact that Plaintiff's claims arose after the filing of the Bankruptcy Petition did not relieve him of his duty to disclose them to the Bankruptcy Court. Moreover, the Bankruptcy Court

14

continued to oversee and implement the modified Bankruptcy Plan based on the incomplete information provided by Plaintiff, thereby accepting Plaintiff's prior inconsistent position. Plaintiff's belated disclosure of this information does not excuse his conduct, just as it did not excuse the plaintiff's omissions in *Harrah*.

Plaintiff's primary argument is that his omissions were the result of mistake or inadvertence. Specifically, he argues that (1) he was suffering from severe depression when the disclosures were required, as a result his judgment was impaired; (2) he relied on his attorney's advice not to disclose his income, so his omissions should be excused; (3) he provided his tax returns, which reported his University income, to the Bankruptcy Trustee, therefore his income was known within the bankruptcy proceedings; and (4) Plaintiff's income as an adjunct professor was *de minimis*, therefore his failure to disclose it was not a material omission. For the reasons that follow, none of these arguments supports a finding of mistake or inadvertence or excuses his conduct.

The Sixth Circuit has held that suffering from "depression and related use of anti-depressant medication" cannot excuse a party's "lack of diligence" in complying with statutory obligations. *Turner v. Mills*, 219 Fed. Appx. 425, 429, (6th Cir. 2007) (petitioner's depression and other ailments "cannot excuse . . . lack of diligence" in failing to timely file petition for habeus corpus relief); *see also Dryden v. Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 19172, *9 (S.D. Ohio Jan. 26, 2015) (social security claimant's failure to exhaust administrative remedies not excused by claims of depression); *Zubovich v. Wal-Mart Stores East, Inc.*, 2010 U.S. Dist. LEXIS 41990, *8, 2010 WL 1742117 (N.D. Ohio Apr. 28, 2010) (plaintiff's depression did not excuse her from filing an

15

untimely EEOC charge). In addition, there is no indication here that Plaintiff's depression was so severe that he was unable to understand his disclosure obligation to the Bankruptcy Court. To the contrary, Plaintiff not only was able to work with his attorney to file his Bankruptcy Petition, but during the same period he was also able to obtain employment as an adjunct professor in the University's School of Business.

Plaintiff's argument that he relied on his attorney's advice also does not excuse his conduct. Plaintiff asserts that his bankruptcy attorney advised him that he did not need to disclose his income from the University because it "had not given him a firm commitment to hire him on an ongoing basis." (Doc. 206 at PAGEID 203.) This advice was clearly erroneous, as Plaintiff should have recognized based on the declarations that he signed and filed with the Bankruptcy Court. (*See*, *e.g.*, BK Doc. 53-1 (attesting that he "has no earned income in at least the last six months" and occupation as "disabled").) Regardless, the Sixth Circuit has found that a party's failure to provide information to a bankruptcy court should not be excused due to reliance on poor legal advice. *See White*, 617 F.3d at 483, citing *Lewis*, 141 F. App'x at 427; *see also Cannon-Stokes*, 453 F.3d at 449 ("bad legal advice does not relieve the client of the consequences of [his] own acts.").

Nor does Plaintiff's argument that he provided his tax returns to the Trustee have merit. First, Plaintiff claims that he sent to the Bankruptcy Trustee his 2015 and 2016 tax returns, which reflected his income from the University. (Doc. 26 at 8.) This assertion is contradicted by the Motion to Dismiss filed by the Trustee on July 14, 2017. In that Motion, the Trustee moves to dismiss the bankruptcy case on the grounds that

the debtors "have failed to turn over a copy of the 2016 tax returns and/or tax refund to the Chapter 13 Trustee as required by Court Order." (BK Doc. 113 at 1.) In response, Plaintiff and his co-debtor stated to the Bankruptcy Court that they "have filed their 2016 tax returns and have provided a copy to the Trustee." (Doc. 114 at 1.) They further state that they "did receive a refund and used those funds to replace their furnace, which was not working[,]" but "will pay to the Chapter 13 Trustee the amount of their 2016 tax refund within a reasonable time." (*Id*.) Notably, Plaintiff did not indicate when he sent the 2016 tax returns to the Trustee. Nor has Plaintiff indicated in the papers filed in this Court when he provided his 2016 tax returns to the Trustee. Based on Plaintiff's response to Defendants' Motion for Judgment on the Pleadings in this case, it is reasonable to conclude that Plaintiff did not provide the 2016 tax returns to the Trustee until after the Trustee moved to dismiss the bankruptcy case.

In addition, judicial estoppel applies when a party asserts a position before one court after having taken a contrary position that was accepted by another court. Plaintiff's disclosure of his tax returns to the Trustee did not correct his misrepresentation to the Bankruptcy Court. The fact that Plaintiff provided the tax returns to the Trustee might have supported an inference that he was not deliberately hiding his income, but any such inference is obliterated by the fact that the 2016 tax returns (which reported most of his University income) were provided only after the Trustee moved to dismiss the bankruptcy case.

Finally, Plaintiff argues that his pay from the University was *de minimis* and therefore should not be considered a material omission before the Bankruptcy Court.

17

The Court disagrees. The University paid Plaintiff the gross amount of $38,762.15. (Doc. 29-1 at ¶5.) A creditor in a bankruptcy proceeding would not consider this amount *de minimis*, and neither does this Court.

IV. **CONCLUSION**

For the reasons above, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 18) under the doctrine of judicial estoppel. The Court **DENIES** Defendants' Motion to Stay Discovery (Doc. 27) pending resolution of the Motion to Dismiss as moot. This case shall be **TERMINATED** on the docket of this Court.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, October 31, 2017.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE